We'll hear the next case, United States v. Goldberg. Morning, Your Honor. My name is John Sarando. I'm appearing on behalf of the appellant Mark Goldberg. And this court, as the court is aware, has requested that a determination be made by the court through counsel's arguments that to the extent to which the tax preparer may be required to pay restitution related to the tax returns paid by his employees. And also the court indicated that the defendant did not waive his appeal as to that or the forfeiture. And so far... You're not sure about the restitution, correct? Yes, that's the big question. And the real question here is whether or not during these proceedings he waived any claims as far as that is concerned. He agreed when he pled that the district court could enter an order of restitution and then the amount would be determined at the FATICO hearing. But then he didn't make any... he didn't contest in the FATICO hearing the issue. So why isn't the whole restitution matter waived? Well, we submit that because the court then allowed him to argue that issue, specific issue at the sentencing proceeding, that it does then bring up for review that issue. The sentencing proceeding, I thought the argument was focusing on what the level of... the adjusted offense level would be under the guidelines and not the question of restitution. And that's how that number came... how that argument... that framed that argument. Well, I think the number came out based on the total number of returns that... was it 2,350 returns? It sticks out in my mind. And the question then became how many of those returns were allocatable to his responsibility. And I think that's where the court then got into the question of the extent to which he could be held liable for that. And it's... Right. But it wasn't focused on restitution, is what I'm saying. It was focused on what his penalty would be, what his sentence would be. Imprisonment, right? It was... well, I think it's necessarily related to the issue of how much are we talking about, because when we get to that amount, it's a question of... It's related to how much we're talking about because that determined, helped to determine, what his adjusted offense level would be. And it would also determine, we submit, how much or to what extent he would be responsible to pay the restitution back. So what was on the record, counsel says, we're not disputing the tax loss. This is J.A. 163. We're not disputing the tax loss. What we're disputing is how that tax loss should be applied with respect to the federal sentencing guidelines. And the issue is whether or not Mr. Goldberg can be held liable for every single return. I guess that's your point? That's the crux. You're not disputing the amount of the restitution order. You're just disputing whether he should be held, in effect, liable for the entire amount as a restitution matter. Disputing the restitution amount to the point of which, in the PSR at paragraph 30 and the government sentencing memorandum at page 6, there's an indication that the government seeks restitution for money that was never paid out by the federal government or New York State. And if we take the definition of restitution, it's to make someone whole for a loss they have suffered. There was no loss suffered when neither government paid out the funds. So we submit that those funds should not be included in the restitution amount. We respectfully submit that's mutually exclusive. When you said we're not disputing the tax loss, that's a reference to the actual amount in the restitution order. So there's a loss. That was what was conceded. And a loss means a victim lost money. But perhaps I've misunderstood and you can correct my misimpression, misunderstanding. That's what I thought originally too, Your Honor. But then when I looked at paragraph 30 and page 6, as I indicated before, that number also includes monies that weren't paid out. And if it's not monies that were paid out, how can that be part of the ingredient of restitution? Was it money that wasn't received that should have been received? Taxes that should have been paid that weren't paid? No, I don't think that's what it is. The way they phrased it was, the way it's phrased is, the fact that Goldberg and his client, taxpayers, never received some of those refunds is irrelevant. So if they didn't get the refund, how did the state and the federal government lose money? And if the federal government and the state... Paid to someone else? No. Were these amounts disputed below? I mean, the district court said, I'm going to do $2.7 million in losses. Was that ever challenged? I think it came out of 2.5, I thought. Well, that was originally what the PSR said. The actual number was 2.786, right? That the court adopted. Yes, Your Honor. Was that number ever challenged in front of the district judge? No. I think the only way you could say it was challenged would be an attempt, it would be a bootstrap, would be that there was an indication that he didn't prepare all those returns, and he wasn't responsible for those returns. Ergo, other than that, Your Honor, no. But this is really an argument that you're making on appeal. That you've noticed that there was no payout. So, what's the harm? What's the harm? What was the loss to anybody? If they had no loss, how do you get restitution? Yeah. And I don't think the government showed on this record that he personally prepared or directed his employees to prepare each fraudulent return. The question that the court gave to us originally was the issue of to what extent. The extent we submit should be part of either the plea elocution, which I don't think you have here, or a proof at trial, which obviously we don't have. But I don't think the extent of his involvement in all of the returns was proven specifically enough. When you contrast it with the James case, the way it was shown at trial, that he should be held liable for that total amount. Thank you. Thank you. We'll hear from the government. Good morning. May it please the court, my name is Jonathan Rebold, and I'm an assistant United States attorney in the Southern District of New York. I represent the United States on appeal that did not represent the government on the proceedings below. This court did ask the parties to address whether a tax preparer could be responsible to pay restitution for the fraudulent filings of his employees, and the answer to that question is clearly yes. Although, as a threshold matter, the government agrees that this issue was waived on two separate grounds by the defendant. First, it was waived because of his failure to pursue a FATICO hearing, despite twice having the opportunity. And second, as has been discussed now, And it was prior to that, it was specified that there would be, that that is the place in which you could have raised it. That's correct, Your Honor. That was understood between the parties. That's correct, Your Honor. And there were two opportunities for the defendant to raise these issues at a FATICO hearing. The defendant twice passed on that opportunity, and then for the first time raised an issue at sentencing. But even at sentencing, as Your Honor pointed out, when the issue came up as to the responsibility that this defendant bore for the filings prepared by his employees, it was not raised in the context of restitution. It was raised exclusively in the context of the loss calculation. And this court has held that when a defendant raises the amount of loss during a discussion on loss calculation, but fails to raise it when it comes to restitution, that the restitution argument is deemed waived. And the court decided that in Coriarty, which is cited in our brief. Now, I should just also point out, because it was the focus of the questioning just a few minutes ago, that defense counsel at the sentencing proceeding, and I point the court to the appendix pages 162 and 163, the defense counsel specifically and explicitly agreed, and I'm pointing to line 16 on page 162. We agree there was a $2.5 million tax loss, and that the tax loss, in fact, was based on fraudulent returns. And then they go on to say that their issue, and again, this is in the loss context, but whether or not Mr. Goldberg was involved in each one of those tax returns. Again, the following page, the defendant says, we're not disputing the factual allegations made by the government. We're not disputing the tax loss. So, this is really a matter that's been raised for the first time today by counsel. This was never raised at the proceedings below, and it's because the government had laid out that both the New York State Department of Tax, as well as the IRS, had paid out this money to the roughly 2,350 people who showed up in line, essentially for free money, at the business that was headed by the defendant. Now, regarding the actual substantive issue that the court asked us to address, the Mandatory Victim Restitution Act, or the MVRA, is crystal clear that there are certain crimes for which victims are entitled to restitution, that those crimes include both conspiracies and schemes to defraud, including specifically wire fraud, which was what the defendant entered a plea of guilty to, among other things. He pled to a fraudulent scheme. Yes, Judge. We're going to focus on the scheme part. Yes. That's not to say that there are no circumstances, even where a person's charged for individual filings, that they couldn't be held accountable, but specifically under the MVRA with a scheme. As the defendant pled guilty to in Count 46 of this indictment, he can, under the MVRA, be held liable for all loss for all victims of that scheme. And specifically, this court has held, under US v. Nucci, that where there are multiple participants, in that case it was in a conspiracy, but where there are multiple participants in a conspiracy or in a scheme, a defendant can be held jointly and severally liable for the entire loss caused by that scheme. He's the only defendant in this. Well, it is, and interestingly, in Nucci there were multiple defendants, and by the time that that defendant, Nucci, had to address the issue of restitution, his co-defendants had already been ordered to pay restitution. So even there, where there are multiple defendants, the court can order restitution in its entirety to each and every one of the defendants for the loss sustained by all of the victims. Here there's only one defendant, so it makes only more sense that the defendant would be responsible to pay restitution for each of the victims. I'm not sure if the court has any other questions on the issue of restitution or forfeiture, but if not, we'd be happy. I had one question, a technical question. There was a preliminary forfeiture order entered, but it doesn't appear that there was ever a final order of forfeiture entered. I could be incorrect on that, Your Honor, but my understanding was there was a consent forfeiture order that was executed on the date of... Right, but it has the word preliminary in it, and it was, I believe it contemplated the entry of an additional order, and I didn't see one. The forfeiture order is entered a year later or so, but I didn't see a final order of forfeiture. Should there be one? I should concede, Your Honor, I'm not positive whether there is or is not the forfeiture order that Your Honor is referencing, although it's my understanding under the law. Forfeiture or restitution? Forfeiture. There was a... The day of the sentencing or the day after, there was a consent preliminary order of forfeiture entered. Yes. And I don't believe, from looking at the docket, that there was ever a final order of forfeiture entered. And I guess as a technical matter, do we need such a final order? My understanding is that the forfeiture becomes final on the date of sentencing in any event. So I'm not sure if there was a subsequent order that was signed by the court. Automatically deemed final? Yes. Is that right? That's my question. Is it automatically deemed final or do you need a separate final order? My understanding is it's automatically deemed final. Okay. Thank you. We'll hear the rebuttal. Counsel used the phrase loss for victim, and we submit that the loss for the victim would only include what they lost. And as to the extent of the fraudulent scheme, I think when counsel indicated that we don't know his exact involvement, I think that the plea in this case, since we have a plea case, could have been more specific as to his overall involvement in the scheme, specifically fact-based as to how he did it so that you don't have a situation where just because the employee is using the one number for the office that that is causing him to be the responsible party. I don't think there was any of that information fleshed out on the record. Thank you very much. Thank you. We'll reserve the decision.